# EXHIBIT A

Select Language▾

All State Agencies | All State Services |

# Nebraska Judicial Branch

## Case Summary

In the District Court of Douglas County
The Case ID is  CI 16 0008879
            Dulce Sherman v. West Corporation
The Honorable Thomas A Otepka, presiding.
Classification: Miscellaneous Civil
Filed on 10/19/2016
This case is Open as of 10/19/2016

## Parties/Attorneys to the Case

|  | Party | Attorney |
|---|---|---|
| Plaintiff | ACTIVE | |
|  | Dulce Sherman | Jennifer L Meyer |
|  |  | 10730 Pacific Street, Ste 111 |
|  |  | Omaha            NE 68114 |
|  |  | 402-393-7529 |
| Defendant | ACTIVE | |
|  | West Corporation | |
|  | c/o CSC Lawyers Incorp Serv Co | |
|  | 233 South 13th Street Suite 1900 | |
|  | Lincoln            NE 68508 | |

## Court Costs Information

| Incurred By | Account | Date | Amount |
|---|---|---|---|
| Plaintiff | Petition | 10/19/2016 | $35.00 |
| Plaintiff | Filing Fee - State | 10/19/2016 | $3.00 |
| Plaintiff | Automation Fee | 10/19/2016 | $8.00 |
| Plaintiff | NSC Education Fee | 10/19/2016 | $1.00 |
| Plaintiff | Dispute Resolution Fee | 10/19/2016 | $0.75 |
| Plaintiff | Indigent Defense Fee | 10/19/2016 | $3.00 |
| Plaintiff | Uniform Data Analysis Fee | 10/19/2016 | $1.00 |
| Plaintiff | J.R.F. | 10/19/2016 | $6.00 |
| Plaintiff | Filing Fee-JRF | 10/19/2016 | $4.00 |
| Plaintiff | Legal Aid/Services Fund | 10/19/2016 | $6.25 |
| Plaintiff | Complete Record | 10/19/2016 | $15.00 |
| Plaintiff | Service Fees | 12/05/2016 | $7.57 |

## Financial Activity

No trust money is held by the court
No fee money is held by the court

## Payments Made to the Court

| Receipt | Type | Date | For | Amount |
|---------|------|------|-----|--------|
| 243536 | Electronic Trans | 10/19/2016 | Sherman,Dulce, | $83.00 |
| | | | Petition | $35.00 |
| | | | Filing Fee - State | $3.00 |
| | | | Automation Fee | $8.00 |
| | | | NSC Education Fee | $1.00 |
| | | | Dispute Resolution Fee | $.75 |
| | | | Indigent Defense Fee | $3.00 |
| | | | Uniform Data Analysis | $1.00 |
| | | | J.R.F. | $6.00 |
| | | | Filing Fee-JRF | $4.00 |
| | | | Legal Aid/Services Fun | $6.25 |
| | | | Complete Record | $15.00 |

## Register of Actions

12/05/2016 Return Summons/Alias Summons
        The document number is 00419491
        Served 11/17/2016, Certified Mail
        Image ID   001417116D01

11/16/2016 Summons Issued on West Corporation
        The document number is 00419491
    E-MAILED: jennifer@dyerlaw.com
        Image ID   D00419491D01

11/15/2016 Praecipe-Summons/Alias
        This action initiated by party Dulce Sherman
    MM
        Image ID   N16320PASD01

10/19/2016 Complaint-Praecipe

        This action initiated by party Dulce Sherman
    no praecipe kr
        Image ID   N16293WFSD01

Filed In Douglas District Court
*** EFILED ***
Case Number: D01CI160008879
Transaction ID: 0004389336
Filing Date: 10/19/2016 11:13:05 AM CDT

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | | |
|---|---|---|
| DULCE M. SHERMAN, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT AND JURY DEMAND** |
| | ) | |
| WEST CORPORATION, a Delaware | ) | |
| Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, by and through her attorneys, and for her cause of action against the Defendant hereby states the following:

### PARTIES-VENUE-JURISDICTION

1.      Plaintiff Dulce M. Sherman is a resident of Omaha, Douglas County, Nebraska.

2.      Defendant West Corporation, is a Delaware corporation that is authorized to conduct business in Nebraska, and at all times relevant was doing business in Omaha, Douglas County, Nebraska.

3.      This Court has original jurisdiction over the claims arising under state law.

4.      Venue is appropriate in this District under Neb. Rev. Stat. §25-403.02. The acts about which Plaintiff complains occurred during the course of her employment in Douglas County, Nebraska.

5.      On or about July 22, 2016, less than 90 days prior to the filing of this Complaint, Nebraska Equal Opportunity Commission made a determination with respect to Plaintiff's charges, NEB 1-15/16-11-47421-RD.

1

6.      On or about October 6, 2016, less than 90 days prior to the filing of this Complaint, Plaintiff received a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission on charge number 32E-2016-00105.

## FACTUAL BACKGROUND

7.      Plaintiff was employed by Defendant from September 13, 2012 to September 15, 2015, most recently as a Human Resource Director.

8.      Plaintiff is a Hispanic female, and at all times relevant to this action, Plaintiff was over the age of 40 years old.

9.      During her employment with Defendant, Plaintiff suffered from one or more physical impairments that substantially limit the major life activities of walking, sitting, lifting, sleeping, learning, thinking and interacting socially. Plaintiff's physical impairments also substantially limit her major bodily functions of her digestive and reproductive systems.

10.     During her employment, Defendant knew of Plaintiff's physical impairments and regarded her as disabled.

11.     During her employment, Plaintiff was not promoted to at least three positions despite the fact that she was qualified for the job and had been in line to the EVP/President since November of 2012.  The persons that were selected for two of the positions were white males, and the third was a white female. Plaintiff had more experience in human resources, more education and more supervisory/leadership experience in comparison to those individuals that were selected for the positions.  Defendant has a job posting policy in the Employee Handbook, and this policy was not followed with respect to hiring for the positions Plaintiff was denied.

12.     During her employment, Plaintiff had one performance review in three years. Defendant did not provide consistent annual reviews and salary increases like it did with

similarly situated male and non-Hispanic employees.

13.    In approximately February 2015, Plaintiff requested a reasonable accommodation from Defendant under the Americans with Disabilities Act ("ADA") and the Nebraska Fair Employment Practices Act ("NEFEPA").  Plaintiff's first request for disability accommodation was unreasonably denied by Defendant because it did not properly engage in the interactive process.  Plaintiff's second request was approved and she was granted the accommodation of working from home one to two days per week as needed for pain.

14.    In approximately February 2015, Plaintiff also requested medical leave for a serious health condition under the Family Medical Leave Act. Plaintiff's request was approved by Defendant.

15.    After making her requests, Plaintiff's supervisor, Chris Brown, treated her negatively and harassed Plaintiff about her condition, calling her lazy and questioning her work ethic and commitment to the company because she was using her accommodations and federally protected leave.

16.    In or about late February 2015, Plaintiff complained about Brown's harassment and retaliation to Defendant's Director of Employee Relations, Tracy Givens. Defendant took no action on Plaintiff's complaint.

17.    In or about March 2015, Plaintiff complained about Brown's harassment and retaliation to Defendant's Vice President of Employee Relations, Penny Majeski.  Majeski responded to Plaintiff' complaint by telling Plaintiff that she "couldn't really help" her and that she should find another job. Defendant took no action on Plaintiff's complaint.

18.    On June 7, 2015, Plaintiff had a conversation with Majeski about how Majeski did not appreciate those employees who used medical leave for the same medical condition that

3

Majeski had.  Plaintiff was also told by one of Defendant's Employee Relation Specialists that when an employee makes an employment related complaint, that their file is tagged and they are labeled as a "troublemaker."

19.     In or about June 2015, Brown was moved to a different position and Defendant replaced him with Wendi Zeller. Plaintiff was not allowed to apply for Brown's position even though she was qualified for the job and had been working in Human Resources for over three years.  When Plaintiff expressed her interest in the position to Vice President of Human Resources, Robin Westfall, she was told that the position would be located in Chicago, IL. However, Zeller was given the position and it remained in Omaha, NE.

20.     In or about June 2015, Plaintiff made a complaint to Zeller about how Defendant was unfairly treating a 60 year old female employee who did not receive a pay increase.  Plaintiff complained that it was discriminatory not to give the older employee an increase, especially when she was out performing everyone who got raises on the team and one of the younger workers who did receive a 4% raise had an active disciplinary action.  Zeller responded to Plaintiff's complaint by telling her not to worry about it.

21.     During one of their first meetings, Zeller asked Plaintiff about her medical condition and informed Plaintiff that she had "heard all about her" from senior management and Brown.  From their first meeting until the time Plaintiff was terminated, Zeller treated Plaintiff negatively, deprived Plaintiff of the benefits of her reasonable accommodation and harassed her about her disability.

22.     Zeller would require Plaintiff to attend meetings on short notice on days she was working from home or on days Zeller knew Plaintiff was taking family medical leave. Zeller would interrogate Plaintiff about her condition and question her ability to do her job because of

her condition each time she utilized her accommodation or family medical leave. On one occasion, Zeller told Plaintiff that she discussed her medical condition with one of her friends who was a nurse and proceeded to make derogatory comments about Plaintiff's medical condition. Plaintiff told Zeller that her understanding of Plaintiff's condition was not correct, and defended her need for an accommodation and family medical leave. Zeller's treatment made Plaintiff feel like she could not use her accommodation or family medical leave without harassment or retaliation.

23.     From June 2015 until the time Plaintiff was terminated, Zeller gradually took several of Plaintiff's leadership duties and autonomy away from her, leaving Plaintiff with essentially a recruiting position. Zeller would also punish Plaintiff with an increased workload after she would use her accommodation or she would take family medical leave.  Plaintiff had more work to do than any other Director in her working group, and as a result, she often had to conduct interviews or complete projects outside of her "core hours."

24.      In July 2015, Defendant implemented telecommuting in several states for non-disabled employees. A male Director who was similarly situated to Plaintiff and supported the same EVP/President was allowed to relocate to Kansas and telecommute for 100% of his duties with travel to the Omaha office once or twice a month.

25.     In July 2015, Plaintiff made a complaint about Zeller's treatment and lack of support of her accommodation and family medical leave to Westfall. Plaintiff complained that she was being held to a different standard than other leaders who were allowed to behave unprofessionally towards her. Westfall did not offer any assistance and told Plaintiff that many of Defendant's employees did not appreciate Plaintiff's "uniqueness."

26.     In or about August 2015, Zeller told Plaintiff that managers were complaining

about her work; specifically that she was slow and missing deadlines.  Zeller told Plaintiff that the managers did not like Plaintiff. When Plaintiff asked for more specific feedback, Zeller declined to respond. Plaintiff asked for clarification so that she could try and meet performance expectations, and Zeller criticized Plaintiff for asking too many questions.  Plaintiff asked why all of her projects and job duties were being taken away from her, and Zeller responded that Westfall wanted it that way. Plaintiff discussed the comments Zeller made with the other managers and was told that they did not agree with the statements Zeller made.

27.     In or about August 2015, Zeller and Majeski began to harass Plaintiff about her family medical leave timesheets. First, Plaintiff was disciplined for allegedly not turning in her timesheets, when in fact Zeller failed to submit them. Then Plaintiff was told that she was not completing the timesheet correctly, and if she missed more than two hours of work on her timesheets, she would be docked pay.  Plaintiff sought clarification about counting the time she was working outside of her "core hours," and Majeski told Plaintiff that her pay would still be docked even if she worked outside "core hours" or above 40 hours.  Plaintiff requested that she be compensated for the hours she worked that were outside of her "core hours", and neither Majeski nor Zeller responded.  Plaintiff also requested that she be sent the policy or written instructions for how to complete her family medical leave timesheets.  Majeski responded to Plaintiff that no instructions existed and that filling them out was "extremely obvious." Plaintiff went over six months without having any issue with submitting the timesheets before Majeski and Zeller began to harass her about them. Majeski and Zeller also changed the policy for Plaintiff's submission of her timesheets to include a "wet signature," making it increasingly difficult for Plaintiff to get them submitted on time if she was working from home or out on leave. When Plaintiff asked why the policy was changed just for her, she was told that it was up

to the supervisor to decide how to handle it.

28.     On August 27, 2015, Plaintiff had medical testing scheduled to treat her serious health condition.  When discussing the issue in an email, Zeller asked Plaintiff, "If you are in so much pain, how can you support the business and your team?" The email was copied to Defendant's Vice President of Employee Relations, Risk Management, and an Employee Relations Specialist.  Zeller's email also suggested that Employee Relations should visit with Plaintiff about her condition and need for leave.  Thereafter, Plaintiff was told that she must copy all the recipients of said email whenever she was going to take her family medical leave. Plaintiff felt that she was being singled out and felt humiliated that she was being disciplined for her medical condition.

29.     Even though she was taking family medical leave that day, close to 5pm on August 27, 2015, Plaintiff received an email with instructions from Zeller to submit a project. Plaintiff feared for her job, so instead of taking the family medical leave she needed, Plaintiff worked until 1 a.m. to finish the project.

30.     On September 15, 2015, Plaintiff was terminated from her employment allegedly because her position was eliminated in a "re-organization." Plaintiff's job duties were assumed by a white male who was under 40 years old and had no known disability.  Plaintiff was the only person in Defendant's Human Resources working group that was terminated due to the alleged "re-organization."

31.     Prior to termination, Plaintiff's job performance was above satisfactory, and the team she supported had a performance/workload increase of 150% year over year.

32.     At the time of her termination, Plaintiff was earning approximately $80,000 per year plus semi-annual bonuses working full time hours for Defendant. As of the date of this

filing, Plaintiff's lost wages resulting from Defendant's wrongful conduct are approximately $23,000.00 and are continuing. As part of her compensation, Plaintiff also received health, dental, and vision insurance, 401K retirement contributions, life insurance, accidental death insurance, short-term disability insurance and long-term disability insurance in amount that is currently unknown to Plaintiff and will be subject to further discovery.

33.     Subsequent to her termination, Plaintiff applied for new employment with several companies and was turned down for the prospective positions once Defendant was contacted for a reference. On one particular occasion, Plaintiff applied for a position with a company related to Defendant, and was told she would be hired so long as Defendant confirmed that Plaintiff was eligible for rehire. This particular employer never contacted Plaintiff thereafter.

34.     As a result of Defendant's wrongful conduct, Plaintiff suffered lost wages, compensatory damages, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and has also incurred attorney's fees and other costs that are continuing.

## COUNT I

### DISABILITY DISCRIMINATION

### 42 U.S.C. §§12101 et seq. ("ADA")

35.     Plaintiff hereby incorporates paragraphs 1 through 34 as if fully set forth herein and states:

36.     Defendant is and was at all times material an "employer" within the meaning of under 42 U.S.C §12111.

37.     Plaintiff is and was disabled within the meaning of the ADA, as amended.

38.     Defendant regarded Plaintiff as disabled by an actual or perceived impairment that substantially limits a major life activity.

39.     At all times relevant, Plaintiff suffered from an impairment that substantially limited one or more of her major life activities and major bodily functions.

40.     At all times relevant, Plaintiff was able to perform the essential functions of her job, with or without reasonable accommodation.

41.     Defendant discriminated against Plaintiff because of her disability and altered a term, condition and/or privilege of her employment, including but not limited to, failing to promote Plaintiff, harassing Plaintiff about her disability and discharge of her employment.

42.     Defendant failed to accommodate Plaintiff's disability in violation of the ADA.

43.     Defendant failed to engage in good faith in an interactive process with Plaintiff to assist her in accommodating her disability in violation of the ADA.

44.     Plaintiff's disability was a motivating factor in such discrimination, failure to accommodate and failure to engage in the interactive process.

45.     The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendant is subject to punitive damages.

46.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## COUNT II

### DISABILITY DISCRIMINATION

### Neb. Rev. Stat. §48-1104 ("NEFEPA")

47.     Plaintiff hereby incorporates paragraphs 1 through 46 as if fully set forth herein and states:

48.     Defendant is and was at all times material an "employer" within the meaning of under Neb. Rev. Stat. §48-1102.

49.     Plaintiff is and was disabled within the meaning of the NEFEPA.

50.     Defendant regarded Plaintiff as disabled by an actual or perceived impairment that substantially limits a major life activity.

51.     Plaintiff was qualified to perform the essential functions of the job, with or without accommodation.

52.     At all times relevant, Plaintiff suffered from an impairment that substantially limited one or more of her major life activities and major bodily functions.

53.     Defendant discriminated against Plaintiff because of her disability and altered a term, condition and/or privilege of her employment, including but not limited to, failing to promote Plaintiff, harassing Plaintiff about her disability and discharge of her employment.

54.     Defendant failed to accommodate Plaintiff's disability in violation of the NEFEPA.

55.     Defendant failed to engage in good faith in an interactive process with Plaintiff to assist her in accommodating her disability in violation of the NEFEPA.

56.     Plaintiff's disability was a motivating factor in such discrimination, failure to accommodate and failure to engage in the interactive process.

57.     The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by state law, and by its conduct Defendant is subject to punitive damages payable to the Nebraska Common Schools Fund.

58.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## COUNTS III AND IV

## AGE DISCRIMINATION

## 29 U.S.C. §§621 et seq. and Neb. Rev. Stat. §48-1004(1)

59.     Plaintiff hereby incorporates paragraphs 1 through 58 as if fully set forth herein and states:

60.     At all times relevant, Plaintiff was over the age of 40.

61.     Defendant discriminated against Plaintiff with respect to the terms and conditions of her employment and terminated her employment.

62.     Plaintiff's age was a motivating factor in Defendant's actions.

63.     Plaintiff was qualified for her position at the time of her termination.

64.     Other similarly situated persons that were younger than 40 were promoted over Plaintiff, not disciplined and/or terminated for similar conduct as Plaintiff, and/or Plaintiff was replaced by another individual under the age of 40.

65.     As a result of Defendant' acts and omissions, Plaintiff has in the past, and will in the future, suffer injuries and damages, including, but not limited to, mental and emotional

distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## COUNTS V AND VI

## SEX DISCRIMINATION

### 42 U.S.C. §§2000(e) et seq. and Neb. Rev. Stat. §48-1004

66.     Plaintiff hereby incorporates paragraphs 1 through 65 as if fully set forth herein and states:

67.     Defendant discriminated against Plaintiff with respect to terms and conditions of her employment on the basis of her sex in violation of the Title VII of the Civil Rights Act of 1964, as Amended ("Title VII"), and the NEFEPA by treating her differently than similarly-situated male co-workers.

68.     Plaintiff suffered adverse action, including but not limited to unequal pay, failure to promote and termination of employment.

69.     Plaintiff's sex was a motivating factor in the decision-making regarding Plaintiff's terms and conditions of employment.

70.     The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal and state law, and by its conduct Defendant is subject to punitive damages.

71.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

12

**COUNTS VII AND VIII**

**NATIONAL ORIGIN DISCRIMINATION**

**42 U.S.C. §§2000(e) et seq. and Neb. Rev. Stat. §48-1004**

72.     Plaintiff hereby incorporates paragraphs 1 through 71 as if fully set forth herein and states:

73.     Defendant discriminated against Plaintiff with respect to terms and conditions of her employment on the basis of national origin in violation of the Title VII and the NEFEPA by treating her differently than similarly-situated non-Hispanic co-workers.

74.     Plaintiff suffered adverse action, including but not limited to unequal pay, failure to promote and termination of employment.

75.     Plaintiff's national origin was a motivating factor in the decision-making regarding Plaintiff's terms and conditions of employment.

76.     The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal and state law, and by its conduct Defendant is subject to punitive damages.

77.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

**COUNT IX**

**RACE DISCRIMINATION**

**42 U.S.C. § 1981**

78.     Plaintiff hereby incorporates by reference paragraphs 1 through 77 and states:

79.     Defendant discriminated against Plaintiff on the basis of her race in violation of 42 U.S.C. § 1981 by subjecting her to disparate treatment in the terms, privileges and conditions of her employment.

80.      Plaintiff suffered adverse action, including but not limited to unequal pay, failure to promote and termination of employment.

81.     Plaintiff's race was a motivating factor in the decision-making regarding Plaintiff's terms and conditions of employment.

82.     The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal and state law, and by its conduct Defendant is subject to punitive damages.

83.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress; fear; anguish; humiliation; embarrassment; lost enjoyment of life; lost wages, benefits, future earnings, and other emoluments of employment.

## COUNTS X AND XI

### RETALIATION

### 42  U.S.C. §12203 and Neb. Rev. Stat. §48-1114

84.     Plaintiff hereby incorporates paragraphs 1 through 83 as if fully set forth herein and states:

85.     During her employment, Plaintiff engaged in protected activity, including but not limited to exercising her rights under the ADA and NEFEPA, internally complaining of age, sex, national origin and disability discrimination and filing a charge of discrimination against Defendants with the NEOC.

86.     Defendant took adverse employment action against Plaintiff, including but not limited to subjecting her to harassment, unfavorable work schedules, subjecting her job performance to higher scrutiny than others, not selecting her for promotions and terminating her employment.

87.     There is a causal connection between Plaintiff's participation in protected activity and Defendant's adverse action against her.

88.     The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal and state law, and by its conduct Defendant is subject to punitive damages.

89.     As a result of Defendant's retaliation, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## COUNT XII

## VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT

## 29 U.S.C. 2601 et seq.

90.     Plaintiff hereby incorporates paragraphs 1 through 89 as if fully set forth herein and states:

91.     Defendant is and was at all times material an "employer" within the meaning of the Family Medical Leave Act.

92.     Plaintiff is and was at all times material an "eligible employee" within the meaning of the Family Medical Leave Act.

93.     During all times of her employment, Plaintiff suffered from one or more "serious health conditions" within the meaning of the Family Medical Leave Act.

94.     Plaintiff was entitled to a leave of absence pursuant to her rights under the Family Medical Leave Act.

95.     Plaintiff invoked her right to a leave of absence under the Family Medical Leave Act.

96.     Defendant failed to provide Plaintiff with the protected leave that the Family Medical Leave Act requires.

97.     Defendant interfered with Plaintiff's right to take leave under the Family Medical Leave Act.

98.     Defendant retaliated against Plaintiff and terminated Plaintiff for exercising her rights under the Family Medical Leave Act.

99.     As a result of Defendant's acts and omissions, Plaintiff has in the past, and will in the future, suffer damages including, but not limited to, lost wages, benefits, future earnings, liquidated damages and other emoluments of employment.

## DAMAGES

100.    Plaintiff hereby incorporates by reference paragraphs 1 through 99 and states:

101.    As a result of Defendant's discrimination and retaliation, Plaintiff has suffered damages and seeks the following relief:

    a.  Back pay and lost benefits to the time of trial;

    b.  Front pay including retirement and other benefits;

c. Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

d. Punitive damages for Defendant's actual malice or reckless indifference to Plaintiff's federally protected rights;

e. Punitive damages payable to the Nebraska Common Schools Fund for Defendant's actual malice or reckless indifference to Plaintiff's state protected rights;

f. Liquidated damages for FMLA violation as prescribed by 29 U.S.C §2617;

g. Liquidated damages for ADEA violation as prescribed by 29 U.S.C. § 626(b);

h. Attorney's fees, expert witness fees and other reasonable costs; and,

i. Pre-judgment and post judgment interest.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount which will fully and fairly compensate her for her injuries and damages, for all her general, special and punitive damages, for costs, attorney's fees, interest and for such other relief as just and equitable.

Plaintiff demands a trial by jury.

Dated: October 19, 2016.

DULCE M. SHERMAN, Plaintiff

BY: /s/ Jennifer Turco Meyer
Jennifer Turco Meyer, #23760
Of Dyer Law, P.C., LLO
10730 Pacific Street, #111
Omaha, Nebraska 68114
(402) 393-7529

17

(402) 391-2289 facsimile
Jennifer@dyerlaw.com
Attorney for Plaintiff

Filed in Douglas District Court
*** EFILED ***
Case Number: D01CI160008879
Transaction ID: 0004497414
Filing Date: 11/15/2016 04:52:18 PM CST

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | | |
|---|---|---|
| DULCE M. SHERMAN, | ) | Case No. CI16-8879 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **PRAECIPE** |
| | ) | |
| WEST CORPORATION, a Delaware | ) | |
| Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

TO THE CLERK OF SAID COURT:


PLEASE ISSUE Summons with a copy of the Amended Complaint in the above-entitled matter and deliver the same to attorney for the Plaintiff for service upon the Defendant via certified mail, return receipt requested, to the following address:


WEST CORPORATION
by and through their Registered Agent
CSC-Lawyers Incorporating Service Company
233 South 13th Street, Suite 1900
Lincoln, NE 68508

DATED this 15th day of November, 2016.


DULCE M. SHERMAN, Plaintiff



BY:     /s/ Jennifer Turco Meyer
Jennifer Turco Meyer, #23760
Of Dyer Law, P.C., LLO
10730 Pacific Street, #111
Omaha, Nebraska 68114
(402) 393-7529
(402) 391-2289 facsimile
Jennifer@dyerlaw.com
Attorney for Plaintiff

| Image ID:<br>D00419491D01 | **SUMMONS** | Doc. No.    419491 |
|---|---|---|

IN THE DISTRICT COURT OF Douglas COUNTY, NEBRASKA
1701 Farnam
Omaha                    NE 68183


Dulce Sherman v. West Corporation

Case ID: CI 16    8879


TO:  West Corporation

**FILED BY**

Clerk of the Douglas District Court
**11/16/2016**

You have been sued by the following plaintiff(s):

Dulce Sherman




Plaintiff's Attorney:   Jennifer L Meyer
Address:                10730 Pacific Street, Ste 111
                        Omaha, NE 68114

Telephone:              (402) 393-7529

A copy of the complaint/petition is attached. To defend this lawsuit, an appropriate response must be served on the parties and filed with the office of the clerk of the court within 30 days of service of the complaint/petition. If you fail to respond, the court may enter judgment for the relief demanded in the complaint/petition.

Date: NOVEMBER 16, 2016    BY THE COURT:    *John M. Friend*
                                             Clerk

PLAINTIFF'S DIRECTIONS FOR SERVICE OF SUMMONS AND A COPY OF THE COMPLAINT/PETITION ON:

West Corporation
c/o CSC Lawyers Incorp Serv Co
233 South 13th Street Suite 1900
Lincoln, NE 68508

Method of service:  Certified Mail

You are directed to make such service within ten days after the date of issue, and file with the court clerk proof of service within ten days after the signed receipt is received or is available electronically, whichever occurs first.

| SERVICE RETURN | Doc. No.    419491 |
|---|---|

```
                   Douglas District Court
              1701 Farnam
              Omaha              NE 68183
```

To:
Case ID: CI 16     8879 Dulce Sherman v. West Corporation

Received this Summons on _____,_____.  I hereby certify that on

_____, _____ at _____ o'clock ___M. I served copies of the Summons
upon the party:

_____

by _____

_____

_____

as required by Nebraska state law.

Service and return      $ _____

Copy                       _____

Mileage _____miles         _____

   TOTAL                 $ _____

Date: _____      BY: _____
                                       (Sheriff or authorized person)

# CERTIFIED MAIL
# PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: _____

At the following address: _____

_____

_____

on the _____ day of _____ _____, as required by Nebraska state law.

_____

Postage $ _____     Attorney for: _____

The return receipt for mailing to the party was signed on _____,_____.

```
To: West Corporation                From:  Jennifer L Meyer
    c/o CSC Lawyers Incorp Serv Co          10730 Pacific Street, Ste 111
    233 South 13th Street Suite 1900        Omaha, NE 68114
    Lincoln, NE 68508
```

## ATTACH RETURN RECEIPT & RETURN TO COURT



**SERVICE RETURN**

Doc. No.   419491

Douglas District Court
1701 Farnam
Omaha                    NE 68183

To:
Case ID: CI 16    8879 Dulce Sherman v. West Corporation

<table>
<tr><td><b>SENDER: COMPLETE THIS SECTION</b></td><td><b>COMPLETE THIS SECTION ON DELIVERY</b></td></tr>
<tr><td>
■ Complete items 1, 2, and 3.<br>
■ Print your name and address on the reverse so that we can return the card to you.<br>
■ Attach this card to the back of the mailpiece, or on the front if space permits.<br>
1. Article Addressed to:<br>
<i>West Corporation<br>
CSC-Lawyers Incorporating Service Company<br>
Registered Agent<br>
233 S. 13th St., #1900<br>
Lincoln NE 68508</i><br>
<br>
9590 9402 1652 6053 0476 05
</td><td>
A. Signature<br>
X <i>Kylie Anders</i>  ☐ Agent  ☐ Addressee<br>
B. Received by (Printed Name)  C. Date of Delivery<br>
<i>Kylie Anderson</i>  11/17/16<br>
D. Is delivery address different from item 1?  ☐ Yes<br>
If YES, enter delivery address below:  ☐ No<br>
<br>
3. Service Type<br>
☐ Adult Signature<br>
☐ Adult Signature Restricted Delivery<br>
☑ Certified Mail®<br>
☐ Certified Mail Restricted Delivery<br>
☐ Collect on Delivery<br>
☐ Collect on Delivery Restricted Delivery<br>
☐ Insured Mail<br>
☐ Insured Mail Restricted Delivery (over $500)<br>
☐ Priority Mail Express®<br>
☐ Registered Mail™<br>
☐ Registered Mail Restricted Delivery<br>
☐ Return Receipt for Merchandise<br>
☐ Signature Confirmation™<br>
☐ Signature Confirmation Restricted Delivery
</td></tr>
<tr><td colspan="2">2. Article Number  7005 1160 0003 3071 4967</td></tr>
<tr><td>PS Form 3811, July 2015 PSN 7530-02-000-9053</td><td>Domestic Return Receipt</td></tr>
</table>

...by certify that on ...copies of the Summons

**#6**  FILED
IN DISTRICT COURT
DOUGLAS COUNTY NEBRASKA
DEC 05 2016
JOHN M. FRIEND
CLERK DISTRICT COURT

## CERTIFIED MAIL
## PROOF OF SERVICE

Copies of the Summons were mailed by certified mail,
TO THE PARTY: West Corporation

At the following address: by and through their Registered Agent, CSC-Lawyers Incorporating
Service Company, 233 South 13th Street, Suite 1900, Lincoln, NE 68508

on the ___16th___ day of ___November___ ___2016___, as required by Nebraska state law.

Postage $ ___7.57___    Attorney for: Dulce Sherman, Plaintiff

The return receipt for mailing to the party was signed on November 17 ___2016___.

To: West Corporation
c/o CSC Lawyers Incorp Serv Co
233 South 13th Street Suite 1900
Lincoln, NE 68508

From: Jennifer L Meyer
10730 Pacific Street, Ste 111
Omaha, NE 68114

## ATTACH RETURN RECEIPT & RETURN TO COURT